```
 1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   JOHN DOE,                       )  Docket No. 17 C 3781
                                     )
 4                   Plaintiff,      )
                                     )
 5        v.                         )  Chicago, Illinois
                                     )  May 24, 2017
 6   UNIVERSITY OF CHICAGO,          )  10:30 o'clock a.m.
                                     )
 7                   Defendant.      )

 8               TRANSCRIPT OF PROCEEDINGS - MOTION
                 BEFORE THE HONORABLE JOHN Z. LEE
 9
     APPEARANCES:
10
     For the Plaintiff:              FALKENBERG FIEWEGER & IVES LLP
11                                   BY:  MR. JAMES PETER FIEWEGER
                                     30 North LaSalle Street
12                                   Suite 4020
                                     Chicago, Illinois 60602
13
                                     WARSHAW BURSTEIN, LLP
14                                   BY:  MS. KIMBERLY C. LAU
                                     555 Fifth Avenue
15                                   New York, New York 10017
                                     (appearing telephonically)
16
     For the Defendant:              FRANCZEK RADELET PC
17                                   BY:  MS. SCOTT L. WARNER
                                     300 South Wacker Drive
18                                   Suite 3400
                                     Chicago, Illinois 60606
19
     Also Present:                   MS. ELIZABETH L. SHANIN
20                                   Associate General Counsel
                                     The University of Chicago
21

22
                         ALEXANDRA ROTH, CSR, RPR
23                         Official Court Reporter
                         219 South Dearborn Street
24                              Room 1224
                         Chicago, Illinois 60604
25                            (312) 408-5038
```

1    (Proceedings had in open court:)

2         THE CLERK:  Case 17 C 3781, Doe versus the University

3    of Chicago.

4         MR. FIEWEGER:  Good morning, your Honor.  Jim Fieweger

5    on behalf of the plaintiff John Doe.

6         MR. WARNER:  And Scott Warner on behalf of the

7    University of Chicago.  Elizabeth Shanin from the counsel's

8    office of the university is also with me again today.

9         THE COURT:  And who do we have on the phone?  I'm

10   sorry?

11        MS. LAU:  And Kimberly Lau on the phone for the

12   plaintiff, your Honor.

13        THE COURT:  All right.  Great.  So where are we at

14   this point?

15        MR. WARNER:  So we made very good progress.  We have

16   been working diligently and lots of communications back and

17   forth with respect to the various issues that were under

18   consideration at the previous hearing.

19        Yesterday morning we got a three-and-a-half-page list

20   or so from Ms. Lau.  And we've been working through those

21   issues with the university.  I can take a stab at just

22   summarizing where I think we are, try to break it up into

23   categories.

24        THE COURT:  Okay.

25        MR. WARNER:  In terms of course work that's been

1  missed, the university started audio recording lectures

2  yesterday.  So those are covered as of yesterday.

3  　　　　　For class notes, we suggested to Ms. Lau that her

4  client provide a list of students in the courses that the

5  plaintiff believes would be good to ask for notes.  We now have

6  that list.  I received that today, and I've shared that with

7  the university.  So in terms of getting notes from other course

8  sessions that the plaintiff has missed, that will be addressed

9  in that manner.

10  　　　　　With respect to courses going forward, that is

11  remaining courses, I say it breaks into -- I'd say it breaks

12  into two different categories:  Regular class sessions,

13  lectures, et cetera, for those, we've been working on

14  arrangements to video record those.  For those which we're not

15  able to video, there'll be audio recording.  We're really just

16  waiting on a couple of approvals or conferrals with the AV

17  department at the university.  The classrooms differ.  So we

18  are working on that.  To the extent those can't be video

19  recorded, I'm sure it won't be a problem to audio record them.

20  　　　　　There are also several remaining sessions that involve

21  student presentations, where the focus of those sessions is

22  students getting up and making presentations.  Those are

23  optional, not required, No. 1.  And two, the university does

24  not really want to be involved in going to individual students

25  and asking for their consent to be videotaped or audio recorded

4

1    for that matter.  I explained that to Ms. Lau.  She may have a

2    response this morning.  My understanding is that we have

3    essentially reached agreement on that point.

4           For meetings with faculty to discuss either courses

5    that have been missed or ongoing projects, the university has

6    agreed to allow the plaintiff to come on campus for in-person

7    meetings.  What we've asked is that the plaintiff provide the

8    dean of students and the school with as much notice as possible

9    so that the university dean of students can notify Ms. Roe that

10   the plaintiff will be present on campus at a particular time

11   and in a particular location.

12          The university is not in a position to demand that

13   faculty members, you know, come back from Singapore or wherever

14   or otherwise sort of change their schedules.  But, you know,

15   what the dean of students is willing to do is encourage them to

16   meet with the plaintiff in an effort to accommodate that.  And

17   again, as far as I know, we're in agreement on that issue.

18          There also are --

19      (Brief interruption.)

20          MR. WARNER:  It's not my child this time.

21          There also are some other activities that were

22   mentioned for the first time in the document that we got

23   yesterday, a lecture series, which again is not required.

24   Those are already being audio -- or I'm sorry.  Those are

25   already being video recorded.  Those will be available on the

1  university's website.

2          Some weekly seminars, again not mandatory, not

3  required, that involve outside speakers and a brown-bag series

4  with other students.  And there the University is not inclined

5  to videotape those for two reasons.  One, they are not

6  required.  Secondly and more importantly, again, the university

7  doesn't want to be asking outside presenters to consent to be

8  videotaped.  Same with the students, asking them on a

9  one-on-one basis to consent to be recorded for those weekly

10 seminars.

11         And then the same for a couple of conferences being

12 held on campus in between now and August.  Again, these are not

13 mandatory or required for the degree program.  To the extent

14 they are already going to be video recorded, much like the

15 lecture series that I mentioned, those would be made available

16 to the plaintiff.

17         And I believe that's everything I have.

18         THE COURT:  Okay.  Ms. Lau?

19         MS. LAU:  Hi, your Honor.

20         The only -- we do agree that the school has been

21 working diligently with us, and do appreciate that, in trying

22 to obtain alternative positions, you know, accommodations.

23         The one matter that's still outstanding and that I did

24 not receive a response to yet is reactivating my client's

25 courses and program website, portal called Chalk, C-h-a-l-k.

1   That's to allow him access to the current course materials for

2   his four courses.  That's different from taking notes in class,

3   and that's different from what is being, you know, discussed

4   verbally by the professors in the class.

5          So I don't -- I didn't receive a response on that.

6   But that's the one thing that's outstanding on the

7   accommodations issue.

8          MR. WARNER:  I can address that.  It's no problem.

9          THE COURT:  So they have agreed on that.

10         MS. LAU:  Okay.  Then I think -- I think we have, you

11  know, done some good work together to get sufficiently

12  reasonable alternatives for my client for this remaining part

13  of this spring quarter.  We have not yet gotten to the

14  discussion of the summer quarter.  And that would be the

15  remaining part of my client's second year.  So we are hopeful

16  that we can continue to discuss that in good faith.

17         It is my understanding that the school is holding off

18  to discuss that because they would like to first see what

19  happens with this potential new review board process that they

20  are wanting to invoke.  And so I would like to talk that out

21  with you, your Honor, today.

22         THE COURT:  Okay.  Before you do that, I think that

23  the step-wise approach is also wise because for your client as

24  well, because your client can assess whether or not these

25  accommodations would sufficiently address the educational

1    requirements for his degree program.  And so it seems to me

2    that the parties do have an agreement, at least through the

3    exams for the spring term.  That's through June 9 of this year.

4    And at that point in time, I think we will have a better -- you

5    certainly, Ms. Lau, you and your client, will have a better

6    understanding as to how those accommodations are working,

7    whether they address the requirements and the issues that you

8    have raised in your motion or not.

9         And I take it that like anything, it will be a bit of

10   a work in progress as we go forward here.  But I think it

11   probably is in everyone's interest to at least try out for the

12   interim time period this agreement, see if it works out, see if

13   there are any hiccups along the way.  And then I can address

14   what will happen later on in the beginning of June, after the

15   spring term is completed.

16        So, Ms. Lau, go ahead.  You wanted to address the new

17   review board.

18        MS. LAU:  Yes, your Honor.

19        So we understood from further discussions with counsel

20   that the new review board request that is currently on the

21   table has some limitations connected with them insofar as the

22   bases of review that are available to my client in filing a new

23   request for review.  So ordinarily a student is entitled to

24   three bases of review, the first being procedural error; the

25   second being new unavailable, previously not available

1    evidence; and the third being the sanction is disproportionate.

2        We've been advised as of this morning that the final

3    basis is not reviewable, that the expulsion will be as if it

4    still stands.  And that presents a problem, from our view, in

5    why this new review board process cannot fix the problems that

6    led us to your court in the first instance.  We will be in a

7    worse procedural place than we were before we began this

8    lawsuit if we were to embark on this ad hoc process that is

9    being put together by the university that is not allowing a

10   review of what our initial restraining order papers outline has

11   been -- you know, beyond the jurisdiction of what the initial

12   review board did in the first place.

13       So we wouldn't be really reviewing the original

14   committee's decision of a probation sanction.  He would be

15   reviewing the original committee's decision.  And the sanction

16   of, the altered sanction of, expulsion by the review board is

17   still going to stand, which defeats the purpose of having to

18   run into court on this lawsuit in the first place, and which is

19   part of the bases of our causes of action in that that -- that

20   expulsion and that enhanced sanction was arbitrary and

21   capricious, your Honor.

22       And that's why we cannot agree to what the school is

23   offering on this point.

24       MR. WARNER:  May I respond?

25       THE COURT:  You may.

1          MR. WARNER:  So to try to put this into context.

2     There was an initial decision, an initial appeal.  That appeal

3     resulted in the increased sanction of expulsion.

4          What we're proposing now is to essentially go back and

5     do this in a sense the way we would have done it had there been

6     two appeals filed, one by each party, prior to the appeal

7     deadline.  And so what we have proposed is that with respect to

8     the appeal that has already been filed, that those papers that

9     relate to that would essentially stand and come before a new

10    review board, not the same review board that heard the first

11    appeal.

12         Mr. Doe, to the extent he wishes to file his own

13    appeal, can do that.  That appeal would also be heard by the

14    same review board.  So there would be a new review board

15    considering both appeals, both Ms. Roe's appeal and any appeal

16    that Mr. Doe might file.

17         The issue of expulsion won't really be before the

18    board because they are going back a step and considering both

19    appeals together.

20         THE COURT:  So the new board won't be bound by the

21    determination of the original review board and its finding that

22    expulsion is appropriate.

23         MR. WARNER:  Not at all.

24         THE COURT:  Okay.

25         MR. WARNER:  And it's not ad hoc.  It's pursuant to

1    the review board procedures in the student manual.  It's just

2    that we're going back and allowing both appeals to be

3    considered together by a new review board.  And the Court is

4    absolutely correct, that new review board will not be bound by

5    the previous review board's decision.

6          THE COURT:  Okay.  So, Ms. Lau, it seems to me that

7    there must have been some misunderstanding, because what Mr.

8    Warner is telling me now is the opposite, that the prior

9    determination by the review board will have no binding impact

10   on the decision of the newly constituted review board with

11   regard to this matter.  That the new review board will consider

12   the submissions from both the complainant and your client

13   together in assessing whether or not the sanctions, for lack of

14   a better word, imposed by the disciplinary committee was

15   appropriate in light of the standards and the reasons -- and

16   the bases for review.

17         So it seems to me that at least Mr. Warner and the

18   university has gone on record saying that in fact that is not

19   the case, and that they are going to basically do a, for lack

20   of a better word, de novo review based upon the -- given the

21   record before the discipline committee.

22         MS. LAU:  So, just to confirm and clarify.  Is this --

23   from what I'm hearing, are all three bases for review going to

24   be available to both parties essentially on this new request?

25         MR. WARNER:  Yes.  But also just to clarify, it's the

1   three bases of appeal are available to challenge the hearing

2   committee's decision, not the decision of expulsion that the

3   review board made.  So it's all three bases with respect to the

4   original hearing committee's decision.

5           THE COURT:  So, Mr. Warner, if the newly constituted

6   review board determines after reviewing what the disciplinary

7   committee did that the results from disciplinary committee are

8   sufficient and appropriate, then the decision by the prior

9   review board will have no effect?

10          MR. WARNER:  Correct.

11          THE COURT:  And it will be completely superseded by

12  whatever decision the newly constituted review board will have.

13          MR. WARNER:  Correct.

14          THE COURT:  Any other questions, Ms. Lau?

15          MS. LAU:  You know, your Honor, I just -- to be able

16  to -- I guess the concern that still remains here is that there

17  is -- comes a certain point where it's tough to walk things

18  back.  You know, up until this Monday morning, we had not had

19  an agreement by counsel to any of the terms of classes and --

20  and some of these, you know, steps that are coming out about

21  what the review process is going to look like.  None of this

22  has occurred until we filed the lawsuit.

23          So, you know, I think there comes a point where now,

24  because my client is positionally a litigant, suing the school,

25  and combined with what counsel has expressed to me as the

1    school's opinion that my client engaged in a serious ongoing

2    pattern of conduct that significantly impacted one of its

3    students, it signals to me that this is going to be a very --

4    it's a concern.  It's a concern of impartiality, combined with

5    the fact that this -- even a new review board is going to

6    remain secret.  It's going to be no understanding of how they

7    arrive at their decision, what's going to be discussed.  And

8    also we don't know who's going to be comprised of that board.

9              THE COURT:  Ms. Lau, if I can interrupt for a second.

10   Think about this in very practical terms from my perspective,

11   okay?  From my perspective, you are here on a motion for a TRO.

12   The university has more or less substantively addressed much of

13   the academic harm, if not all of the academic harm, that your

14   client says he will face if he is terminated now.  The

15   university has agreed not only to reinstate his visa status,

16   but to allow him to complete the term subject to the

17   accommodations that it has agreed to.

18             The university is also saying -- and here I am putting

19   words in their mouth because I don't think they would literally

20   say it.  But the way I read it is that they basically want a

21   do-over.  They want to reassess, take another look at this, and

22   make sure that what they did, which is any way you look at it a

23   rather drastic remedy, perhaps warranted, perhaps not, to have

24   a newly constituted board take another look at this, given all

25   of the various submissions by both the complainant and your

1    client.

2         It seems to me that that's exactly what you want.  And

3    when you say that now they have changed their tune because you

4    filed the suit, perhaps that is the case.  But that is, after

5    all, why you filed the suit.

6         And so from my perspective, in the end, you and your

7    client may be right on the merits.  But if the university takes

8    another look at this and determines, you know what?  The

9    original measures that were laid out by disciplinary committee

10   are sufficient for the university's purposes, right, then we

11   have a different type of lawsuit here.  If they stand by -- if

12   the reconstituted board makes the same decision as the original

13   board, then you are no worse off than you were before filing

14   the lawsuit.  In fact, I would argue that you are better off

15   because your client has had an opportunity, will have an

16   opportunity, to complete his course work for the spring term.

17        So in very practical terms, I understand what you are

18   saying with regard to litigating your position and making sure,

19   doing all that you can to advocate for your client so that your

20   client prevails in the end.  But what's before me right now are

21   not the merits of the case.

22        What's before me right now is your motion for

23   temporary restraining order, preliminary injunction.  And I see

24   no harm in allowing the university to take a second look at

25   the -- basically reconsider the prior review board's decision

1   in light of the concerns that you have raised both before the

2   lawsuit and as part of this lawsuit.

3          So I'm still trying to understand for current

4   purposes, for the purposes of your motion, what your objections

5   or concerns are with regard to what the university proposes.

6          MS. LAU:  Your Honor, my -- my continuing objection to

7   their proposal is that we will be right back here before your

8   Honor in -- as soon as that expulsion decision comes down

9   for --

10          THE COURT:  Hold on for a second.  And you may well

11   be.  But your client will be better off because he will have

12   completed his spring course work, right?  Unless the decision

13   comes down before June 9, which I suppose it can be.  And then

14   you can come back here.  And you could argue the same things

15   that he should be at least allowed to complete his course work.

16          But your client will be no worse off than he is now.

17          MS. LAU:  And, your Honor, we respectfully believe

18   that he will be worse off because this time he won't be able to

19   argue that he didn't get full relief because we will have

20   essentially -- the university will essentially have been

21   allowed to view this, rewrite -- rewriting the history and a

22   do-over of their process.  And so that -- for those reasons

23   combined with the fact --

24          THE COURT:  So, Ms. --

25          MS. LAU:  -- none of this is provided in their policy.

15

1          THE COURT:  So, Ms. Lau, so you would rather stand on

2    your client's termination now, his expulsion now, rather than

3    go through this process with the prospect that he might

4    actually not be -- the university might not expel him later,

5    based upon your review that you are in a better litigation

6    stance to challenge the expulsion decision, which the

7    university may reconsider?  That to me seems to be very short-

8    sighted when it comes to the benefits, comes to the interests

9    of your client.

10          It seems to me, your client's interest is in

11   completing the course work, and then if he is in fact expelled

12   challenging the expulsion on that basis.  At that time you will

13   be free to argue that the second review board is merely a

14   rubber stamp of the first review board, and that nothing has

15   really changed.  And all those arguments -- and you can say

16   that the first decision by the review board was improper

17   procedurally or otherwise.  So all of those arguments will be

18   reserved.

19          This is not a case where I think you're trying to

20   likening this to some sort of administrative review of an

21   agency decision and saying that the agency gets a free stab at

22   trying to augment the administrative record.  And my response

23   to that is, if that means that the agency is actually going to

24   reconsider in good faith its decision, then that doesn't harm

25   anyone.  In fact, it enures to the benefit of the plaintiff.

16

1          So while I understand your concerns about that the

2   university might use this as a way to -- as an underhanded,

3   disingenuous way of trying to augment the record and make it

4   better for them, particularly because there is going to be

5   basically an arbitrary and capricious standard, it seems to me

6   that the university's willingness to go back and basically

7   reconsider the prior board's determination with a whole new

8   board is something that would benefit your client greatly.

9          Now, on the other hand, if the university does end up,

10  the new review board does end up, expelling your client again,

11  then again you can challenge -- you have all of the challenges

12  that you have with regard to those issues.

13         And I take it, Mr. Warner, that the new review board,

14  will the complainant be allowed to submit new information?  Or

15  will it be based upon the information that she submitted to the

16  old review board?

17         MR. WARNER:  The proposal is, to the extent there --

18  the idea is that to the extent that there is something in

19  addition that the complainant wishes to add, she can do that.

20  If she does that, Mr. Doe in turn would be allowed to

21  supplement his initial response.  She may not.  She may do so.

22         Again -- and the idea there is so that the new review

23  board has as much information before it when considering these

24  two cases together.

25         And I know I don't need to make statements for the

1    record.  But I would just like to clarify that the university

2    really has been engaged in a good-faith effort over the past

3    several days to arrive at a process that's fair for everyone.

4    And they fully intend to carry it out in that spirit.

5          THE COURT:  So let me ask you this, Ms. Lau:  If

6    you -- I guess I have two questions.  No. 1, do you still wish

7    to pursue your motion at this time?  And No. 2, if so, what

8    other -- what is your argument with regard to irreparable harm

9    that your client would face between now and June 9, assuming

10   that the decision of the new review board doesn't come out

11   until sometime after June 9?

12         MS. LAU:  Your Honor, we -- we wish to -- you know

13   what?  I don't know if we can continue this hearing as an

14   end -- and wait for the end of the quarter.  And then that way

15   he could ensure that there is no irreparable harm between now

16   and the end of the quarter because we are following these

17   agreed-to terms, and allow him, you know, the opportunity to

18   continue with classes, which is one of the two reasons why we

19   did ask for your Honor's intervention here.

20         As far as whether, you know, we agree to this review

21   board request, the new -- this new review board procedure, you

22   know, again, our position is, there comes a point where you may

23   not be able to walk this back.  But if your Honor is inclined

24   to, you know, order it, then that's something, you know, that

25   we would do.

18

1        MR. FIEWEGER:  And, your Honor, if I could just with

2   respect to in terms of what we should do with the order today.

3   To follow up on the prospect of entering and continue it, we

4   just received this proposal from Mr. Warner this morning.  We

5   haven't talked to our client about it.  I think we do need an

6   opportunity to talk to him.  I don't think it's going to take

7   long.

8        But the information that we received has been very

9   helpful.  There are a couple of questions I have.  To be fair,

10  I haven't been involved in all the conversations because I was

11  in a mediation all day yesterday.  But some of these may have

12  been addressed already.

13       But one of the questions is, for example, will this

14  new review panel be told that there was a prior review panel?

15  Because they are going to be getting this in a different

16  posture.  As I understand the proposal, they are going to be

17  receiving these submissions that Ms. Roe had already presented

18  to the other.

19       THE COURT:  Here is what I think about the new review

20  panel, okay?  I am not inclined to order that the university

21  engage in this additional procedure.  If the university wants

22  to do so, it can.  Okay?

23       In the same way, Ms. Lau, I am not going to obligate

24  you to participate.  If you think for whatever reason it's

25  actually better for your client not to participate in this new

1    process, that's up to you.  And you can choose not to

2    participate.  And the university can go ahead and do what it

3    does without any input from the plaintiff.  I mean, that's -- I

4    leave that to the parties.

5        For me the issue is the motion for TRO.  Okay?  And

6    let me ask you this:  When would this -- when would the terms

7    of this proposal, once it's finalized, go into effect?

8        MR. WARNER:  It basically is in effect.  And then the

9    next step would be to -- I believe if we use Monday as the date

10   on which the 15-day period for seeking a request for review by

11   Mr. Doe ticks, it would be 15 days from that that he would

12   have, 15 days from Monday, to seek a request for review.

13       MR. FIEWEGER:  And just so I understand, because we

14   need to talk to our client about this.  We do -- I do want to

15   make sure we fully understand the nature of the proposal,

16   because -- and I have -- I appreciate Mr. Warner's submission.

17   I think it seems like it's in good faith.  I have no question

18   about that at all.

19       But my question is, as it stood initially when he

20   received the decision, our client didn't agree with the finding

21   that he had engaged in harassment.  But he was willing to live

22   with it because this -- he was willing to live with the -- with

23   the punishment because he didn't think it was a problem.

24       He didn't -- he was going to be on probation.  He

25   didn't anticipate causing any problem again.  He complied with

1   the no-contact order. He didn't care that the no-contact order

2   was in place. So he was never going to appeal the punishment.

3   The punishment was only going to go to the review panel if Ms.

4   Roe appealed it.

5          So my understanding of the proposal is that Ms. Roe's

6   appeal is automatically going to be reinstated. Because if her

7   appeal of the punishment doesn't exist, we're not going to

8   appeal the punishment. We'll say, we'll take our punishment.

9   We'll go away, and we'll live with this.

10         THE COURT: I think that's going to be up to Ms. Roe,

11  whether or not she wants to continue, submit another appeal.

12         MR. WARNER: And may I just be heard briefly on the

13  TRO issue? I don't -- the university's position is, there is

14  no irreparable harm. We've addressed the issues. And that

15  rather than entering and continuing it again, we would propose

16  that it be denied, perhaps without prejudice, but denied for

17  now because any motion that comes later in time is going to

18  have to be different because the motion that's been filed is

19  sort of moot at this point. And the issues are going to be

20  completely different.

21         And so we respectfully request that the motion for a

22  TRO be denied without prejudice, and the same for the motion

23  for preliminary injunction.

24         MR. FIEWEGER: Your Honor, to be perfectly blunt, we

25  ask that it be entered and continued because it's how we got

1    this dialogue started.

2            THE COURT:  I am not inclined to enter and continue

3    it.  But I do want to know, put pressure on the parties, to

4    make sure you finalize some agreement.  Okay?

5            So I just said I wouldn't enter and continue it,

6    right?  But I am going to step back from that.  So I am going

7    to enter and continued it one more time so that the parties can

8    know that there is a deadline by which I want this done.  I am

9    going to enter and continue it until Friday at 9:30.

10           Here is the deal though:  If the parties can come to

11   an agreement, understanding, before that time -- and I

12   certainly hope that is the case.  I hope that the parties can

13   finalize everything today.  But if they can't, then I will hear

14   everyone.  I will hear from everyone on Friday.  If you are

15   able to, please place a joint call to Ms. Acevedo, let her

16   know.  Okay?

17           And then I will consider that then to be a withdrawal

18   of the motion for TRO without prejudice for refiling at a later

19   time.

20           Clearly, Ms. Lau, I agree with you that if before

21   June 9 the board, the review board, the new review board,

22   decides that expulsion is appropriate here, then you certainly

23   have grounds to refile your motion.  And I will have to address

24   it then.  Or if the issue comes up after June 9, issues with

25   regard to the spring term that can't be worked out, I will have

1   to address your motion at that time too.

2          But for now it seems to me that much of plaintiff's

3   irreparable harm, to the extent he had any, has been addressed

4   by the various proposals that the parties have been discussing,

5   although not finalized, I understand.  And I will give the

6   parties an opportunity to dot the I's and cross the T's and do

7   that.  Okay?

8          Is there anything else I need to address today?

9          MR. FIEWEGER:  No, your Honor.

10         MR. WARNER:  Thank you, your Honor.

11         THE COURT:  Thank you.

12         MR. FIEWEGER:  Thank you very much.

13         MS. LAU:  Thank you, your Honor.

14      (Which were all the proceedings heard in this case.)

15                          CERTIFICATE

16         I HEREBY CERTIFY that the foregoing is a true, correct

17  and complete transcript of the proceedings had at the hearing

18  of the aforementioned cause on the day and date hereof.

19

20  /s/Alexandra Roth                          5/30/2017
    _____    _____
21  Official Court Reporter                       Date
    U.S. District Court
22  Northern District of Illinois
    Eastern Division
23

24

25